## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

LINDA B. MATARESE, *et al.*          )
                                     )
              Plaintiffs,            )
                                     )  CASE NO.  1:09-CV-0857
v.                                   )
                                     )
ARCHSTONE PENTAGON CITY (f/k/a       )
Parc Vista), *et al.*                )
                                     )
              Defendants.            )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Archstone

Pentagon City (f/k/a Parc Vista), *et al.'s* [1] Motion for Summary

Judgment. This case is a housing disability discrimination

action arising under the Fair Housing Act ("FHA"), 42 U.S.C. §§

---

[1] "Defendants" include (1) Archstone Pentagon City (f/k/a Parc Vista) ("APC"), the building in which Plaintiffs reside; (2) Smith Property Holdings Parc Vista LLC ("SP Holdings"), the entity that owns APC; (3) Archstone Communities, LLC, the entity that operates APC and exclusively employs each of the individual Defendants; (4) Archstone MultiFamily Series I Trusts, which holds the controlling interest in Archstone LLC; (5) Archstone LLC, which owns SP Holdings; (6) Mitchell Mann, Operations Manager overseeing APC; (7) Malcolm McGregor, Assistant Community Manager (May 2006 to May 2007) and Community Manager of APC (May 2008 to present); (8) Deeqa Nur, former Community Manager of APC (2005 to 2006) and acting Community Manager during the summer of 2008; (9) Amilcar Garcia, Service Manager for APC from October 2007 to present; and 10) Katrina Wood, receptionist at APC. All claims against Katrina Wood have previously been dismissed. For purposes of this Opinion, the entities will collectively be referred to as "Archstone Defendants," and the employees will be referred to collectively as the "individual Defendants."

3601 *et seq.* (2000), and the Virginia Fair Housing Law ("VFHL"), Va. Code Ann. §§ 36-96.1 *et seq.* (2000).[2] Plaintiffs Ms. Linda and Mr. Domenic Matarese (collectively, "Plaintiffs") claim that Defendants violated these federal and state fair housing laws by discriminating against them because of Ms. Matarese's alleged handicap. Specifically, Plaintiffs claim that Defendants discriminated against them by failing to provide reasonable accommodations to Ms. Matarese to afford her equal opportunity to housing, refusing to renew Plaintiffs' lease, refusing to rent Plaintiffs an apartment at a different Archstone property, making various discriminatory comments concerning Ms. Matarese's alleged handicap, and retaliating against them for raising concerns and filing Fair Housing complaints. In addition, Plaintiffs claim that Defendants were negligent in failing to properly train employees regarding FHA requirements.

The following seven issues are before the Court. First, whether the Court should grant Defendants' Motion for Summary Judgment on all counts because Ms. Matarese does not have a handicap and, therefore, does not fall within one of the FHA's protected classes. The Court denies Defendants' Motion for

---

[2] Because the VFHL largely tracks the FHA, the parallel claims will be analyzed under the same standards unless stated otherwise. *See Moseke v. Miller and Smith, Inc.*, 202 F. Supp. 2d 492, 495 n.2 (E.D. Va. 2002).

2

Summary Judgment on this basis because Plaintiffs have demonstrated that there is a material dispute of fact as to whether Ms. Matarese's condition rises to the level of handicap as defined in the FHA, such that she would fall within one of the FHA protected classes.

Second, whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' claims that Defendants violated § 3604(f)(1) of the FHA and section 36-96.3(A)(8) of the VFHL (Counts I and II) (collectively "refusal to rent claims") when they decided not to renew Plaintiffs' lease, refused to allow Plaintiffs to rent an apartment at another Archstone location, and Plaintiffs still reside in the apartment. The Court denies Defendants' Motion for Summary Judgment on Plaintiffs' refusal to rent claims because Defendants have failed to establish as a matter of law that the nonrenewal of Plaintiffs' lease, the conversion of the lease to a month-to-month tenancy, and the refusal to rent at other Archstone locations do not constitute violations of § 3604(f)(1) of the FHA and section 36-96.3(A)(8) of the VFHL, and there is a dispute of material fact as to whether Defendants discriminated against Plaintiffs on the basis of Ms. Matarese's handicap in connection with these actions.

Third, whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' claim that the individual Defendants made discriminatory statements with respect to the rental of a dwelling in violation of § 3604(c) of the FHA and section 36-96.3(A)(3) of the VFHL (Counts VII and VIII), where Defendants argue that, if such statements were made, they were not made during the decision making process, and, under the ordinary listener standard, they do not indicate a preference, limitation, or discrimination against Ms. Matarese on the basis of her handicap. The Court grants Defendants' Motion for Summary Judgment on these claims against Defendants Nur and Amilcar Garcia because Plaintiffs have not produced any evidence indicating that these individuals made any statements with respect to the rental of their apartment. The Court denies Defendants' Motion for Summary Judgment on these claims against Defendants McGregor and Mann because Plaintiffs have demonstrated that there is a material dispute of fact as to whether the statements of these Defendants indicate impermissible discrimination in connection with the rental of an apartment to Plaintiffs.

Fourth, whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' unlawful discrimination claims (all Counts) because Plaintiffs failed to demonstrate

4

that Defendants' alleged discriminatory housing actions or practices were motivated by discriminatory intent or had a discriminatory impact. The Court denies Defendants' Motion for Summary Judgment on Plaintiffs' discrimination claims based on a theory of discriminatory intent because there is a dispute of material fact as to whether Defendants' motivation for their actions was discriminatory and whether their legitimate nonbusiness reason was merely a pretext. The Court grants Defendants' Motion for Summary Judgment on Plaintiffs' claims based on a theory of disparate impact because Plaintiffs have not produced any evidence, statistical or otherwise, demonstrating that Defendants had a facially neutral policy that had a disparate impact on a protected class.

Fifth, whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' reasonable accommodation claims (Counts V and VI), where Plaintiffs have not produced expert testimony to demonstrate that the proposed accommodations were reasonable and necessary. The Court grants Defendants' Motion for Summary Judgment on Plaintiffs' reasonable accommodation claims because, without expert testimony on the causation issues, Plaintiffs have not met their burden in establishing that the proposed accommodations were necessary to provide her equal opportunity to housing.

Sixth, whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' negligence claim (Count XI) for Defendants' failure to train their employees in the requirements of the fair housing laws. The Court grants Defendants' Motion for Summary Judgment on Plaintiffs' negligence claim because Plaintiffs have not shown that Defendants owed Plaintiffs a legal duty to train their employees in the requirements of the fair housing laws, and, even if they had such a duty, Plaintiffs have not offered any evidence or legal authority establishing the scope of that duty or applicable standard of care.

Seventh, whether the Court should grant Defendants' Motion for Summary Judgment as to all claims against all corporate Defendants that were not directly involved in the management, operation, maintenance, and control of Plaintiffs' apartment building. The Court grants Defendants' Motion for Summary Judgment on all of Plaintiffs' claims against APC, Archstone MultiFamily Series Trust I, and Archstone LLC because APC is not a legal entity, and Plaintiffs failed to offer evidence demonstrating that the other two corporate Defendants had any involvement in the operation and control of APC and its employees.

## I. BACKGROUND

Plaintiffs Linda and Domenic Matarese, a married couple, have rented and lived in Unit 1405 at APC for over 18 years. From 1991 to 2007, their annual lease was routinely renewed. In August 2007, Plaintiffs did not receive a lease renewal invitation letter as they had in previous years. In October 2007, after repeated requests, Plaintiffs' lease was renewed at a 34% increase in rent. In November 2008, Defendants issued Plaintiffs a lease nonrenewal letter, informing them that they would need to vacate the property. Plaintiffs were told that, not only would their lease not be renewed, but they would not be permitted to rent an apartment at a different Archstone location. Although Plaintiffs still reside in the apartment, their lease was converted to a month-to-month tenancy, which Defendants can terminate by providing proper notice.

### Ms. Matarese's condition

Ms. Matarese claims that, for many years, she has suffered severely from various handicaps, including chemical sensitivities to paint fumes, tobacco smoke, and mold; chronic fatigue syndrome; and fibromyalgia. Ms. Matarese claims that she reacts immediately when exposed to particular chemicals, and her condition is distinct from the medical condition known as "Multiple Chemical Sensitivities Syndrome ("MCS"), where a

7

person is sensitive to a variety of unidentified chemicals at low doses. Specifically, she claims to have severe reactions to fresh paint and paint fumes, alleging that exposure to the volatile organic compounds ("VOCs") has a "neurological and respiratory impact" on her. In addition, Ms. Matarese claims to be physically debilitated by exposure to smoke, dust, and mold. Ms. Matarese claims that her reactions when exposed to these chemicals include becoming dizzy, coughing, having trouble breathing, and developing debilitating headaches, sore throats, and respiratory infections. The coughing, sore throats, and other respiratory problems can last for months, affecting her ability to breathe. Due to the reactions she experiences, Ms. Matarese has become extremely afraid of being exposed to such chemicals.

Dr. Jack Williams, an ear, nose, and throat physician, who has treated Ms. Matarese since December 2006, has been designated as Plaintiffs' medical expert. In his affidavit, he states that on multiple occasions Ms. Matarese has developed objective physical symptoms shortly after being exposed to paint, smoke, or mold, including bacterial rhinosinusitis, unusually thick mucus, cough, sore throats, and candida, and that these respiratory problems have persisted sometimes for months. In addition, he states his opinion to a reasonable

8

degree of medical certainty that Ms. Matarese is disabled as a

result of her chemical sensitivities to, *inter alia*, paint,

smoke, and mold; that her exposure to such chemicals has caused

her respiratory problems; that her condition is not shared by

the general public; and that her breathing, ability to work, and

social interaction have been substantially impaired by this

condition. He further opines that Ms. Matarese's condition is

persistent and chronic, and it is not a condition that is merely

episodic or sporadic or that only temporarily limits or impairs

Ms. Matarese's major life activities. He explains that Ms.

Matarese's condition will most likely not abate, and it is

difficult to treat due to Ms. Matarese's demonstrated

sensitivities to many medications. Finally, Dr. Williams opines

that the accommodations sought of Defendants, specifically

avoiding exposing Ms. Matarese to paint, smoke, or mold, were

intended to ameliorate any negative impact on Ms. Matarese's

health and safety.

As a result of Ms. Matarese's impairment, she has not spent

a night outside her home in approximately 15 years and leaves

APC only when necessary. She has sanitized her apartment of

potentially offensive chemicals and generally avoids entering

other APC apartments other than that of her mother, Ms. Bauman,

for whom she serves as primary caretaker.

9

**Defendants' Notice of Ms. Matarese's Condition**

In "fall 2004, November 2004, and spring 2005," Ms.
Matarese informed APC personnel of her chemical sensitivities to
paint, smoke, and mold. (Pls.' Opp. Br. 7 ¶ 15.) In addition,
when she experienced exposure to such chemicals, she requested
various accommodations to address her chemical sensitivities.

In addition to Ms. Matarese's own communications with APC
personnel regarding her condition, Ms. Matarese submitted the
letters of two doctors, confirming Ms. Matarese's chemical
sensitivities and the need to avoid exposing her to the
chemicals that trigger her reactions. Specifically, Ms.
Matarese submitted the letters of Dr. Alpan and Dr. Williams.
Dr. Oral Alpan, an allergist, asthma, and immunology specialist,
treated Ms. Matarese in 2007. In his letter, Dr. Alpan informed
APC that he has been treating Ms. Matarese for multiple
allergies, chemical sensitivities, and respiratory infections
and that Ms. Matarese also suffers from chronic fatigue syndrome
and fibromyalgia. Accordingly, he asked that APC "avoid
exposing Ms. Matarese to paint, chemicals, fumes, dust, mold,
and any other substances that would further denigrate her immune
system and will have a negative impact on her health and
safety." (Pl.'s Br. Ex. 8.)

Further, Dr. Williams, stated in a similar letter to APC that Ms. Matarese has chemical sensitivities and resulting bacterial rhinosinusitis and should not be exposed to fumes and paint chemicals. (Pl.'s Br. Ex. 7.) He later provided a Medical Verification Letter for APC, which confirmed that Ms. Matarese is disabled per the FHA and stated that avoiding exposing Ms. Matarese to paint, chemicals, the fumes and outgassing of paint and other chemicals, tobacco smoke, and mold is necessary and would affirmatively enhance her quality of life and ameliorate the effects of her disability.

## Ms. Matarese's Exposure to Paint and Requested Accommodations

Painting and renovations are routine at APC. Whenever there is a turnover in an apartment, the apartment is freshly painted. Many of Plaintiffs' allegations relate to Defendants' painting and renovation of APC from 2007 through 2008, from which she would experience reactions with varying degrees of severity.[3] In the time period 2007 through 2008, APC painted and cleaned the exterior surfaces of the windows, doors, and handrails of every unit in the building. Completion of this

---

[3] This project may have begun sooner than 2007. Ms. Matarese explains that, in November 2006, APC began painting the building's exterior window trims and balcony railings using VOC paint. The exposure to paint emissions gave Ms. Matarese a respiratory infection that lasted several months. ("Pls.' Br. 7 ¶ 16.)

11

project required gaining access to the units to paint the areas that could not be painted from the outside. Ms. Matarese objected to the paint that APC used, requesting that APC use paint that does not contain VOCs. According to Defendants, the paint they used was selected based on its durability and adhesion to metal surfaces, and Plaintiff could not identify a paint that Defendants could use that had the desired durability and adhesion but that did not contain the VOCs.[4] As a result of this project, Ms. Matarese developed a respiratory infection that lasted several months.

When, in May 2007, APC notified Plaintiffs that personnel needed to enter their unit to paint the interior window frames, Ms. Matarese, who was still recovering from the respiratory infection, provided them with Dr. Alpan's letter, requesting no exposure to paint. Ms. Matarese was told that APC had to paint the unit and had to use VOC paint.

Similarly, APC used oil-based paint inside Ms. Bauman's[5] unit in November 2007, despite knowing of Ms. Matarese's

---

[4] Defendants contend that Defendant Garcia learned of "low-VOC" and "no-VOC" paint in February 2009, and this paint has been used at all times since when painting any unit on Plaintiffs' floor. (Defs.' Br. 7 ¶ 17.)

[5] As stated above, Ms. Bauman is Ms. Matarese's mother. Ms. Bauman lives in an apartment across the hall from Plaintiffs. Ms. Matarese is a primary caretaker for Ms. Bauman.

12

chemical sensitivities and her frequent visits to Ms. Bauman's apartment. Plaintiffs allege that Defendant Mann admitted to Matarese that he understood her chemical sensitivities and that non-VOC paints would be less likely to cause Ms. Matarese a problem, but such paints would cost "a lot." (Pls.' Br. 8 ¶ 18.) When Defendant Mann insisted that APC was going to paint the apartment, Ms. Matarese provided the letter from Dr. Williams confirming her chemical sensitivities.

Ms. Matarese requested as accommodations that APC use non-VOC paint or that APC remove the windows from her unit and paint them elsewhere. Defendant Mann denied her request, even though he admitted that the windows could be removed and painted elsewhere. Instead, Defendant Mann suggested relocating Plaintiffs to a hotel, but Ms. Matarese refused this offer, explaining that she could not risk being exposed to potentially harmful chemicals in an unfamiliar hotel environment.

On June 5, 2008, Defendant Garcia installed drywall in Plaintiffs' apartment. Defendant Garcia refused Ms. Matarese's request to paint the drywall with non-VOC paint, and Ms. Matarese reacted to the paint immediately, coughing, sneezing, and feeling dizzy. Her cough worsened over the next couple of days, and her condition did not improve until months later.

In the summer of 2008, APC painted in two units close to Plaintiffs' apartment. Ms. Matarese requested accommodations in connection with these projects, but her requests were denied.

Defendants contend that they made various offers to accommodate Ms. Matarese to avoid and/or limit her exposure to the VOC's in the paint. Specifically, they offered to paint when Plaintiffs were away from the unit, delay the paint job until Ms. Matarese could stay with her mother in another unit in the building, and even pay for Ms. Matarese to stay in a hotel while the painting was completed. Ms. Matarese refused each offered accommodation.

According to Plaintiffs, APC continued to deny their requests for accommodations regarding exposure to paint during 2009. However, in a letter dated October 16, 2009, Defendants' counsel in this action stated: "We recognize and acknowledge the disability that you have previously identified. All reasonable requests for accommodations will be granted." (Pls.' Ex. 52.)

## Ms. Matarese's Exposure to Smoke and Requested Accommodations

In addition to exposure to paint-related chemicals and fumes, Ms. Matarese alleges that she is also sensitive to smoke.[6] APC is not a smoke-free building, and tenants are allowed to

_____
[6] Plaintiffs also complain that Ms. Matarese was exposed to mold in Ms. Bauman's apartment in June 2008, and Defendants did not accommodate her requests to rectify the problem.

14

smoke in their individual units and on their respective
balconies. On separate occasions, Ms. Matarese complained about
the smoke. She noted cracks on the walls and claimed that the
hallway ventilation system malfunctioned, which exacerbated the
problem. Ms. Matarese, experiencing sensitivities to the smoke,
asked Defendant Garcia to replace the weather stripping around
Plaintiffs' apartment door to block the smoke from entering her
apartment. Defendant Garcia determined that the weather
stripping did not need to be replaced and denied her request.
Defendants also did not seal the cracks or fix the hallway
ventilation system. Instead, Defendants gave Plaintiffs three
small air purifiers.

### Complaints About Ms. Matarese

According to Defendants, they received various complaints
by other tenants regarding Ms. Matarese's behavior in common
areas of APC. For example, Defendants received complaints from
tenants that Ms. Matarese would verbally accost them about their
smoking. In addition, Defendants explain that there is a
documented history of complaints by other tenants regarding Ms.
Matarese's behavior in common areas of APC, such as the pool in
the building. Further, they received complaints from
independent contractors about Ms. Matarese's behavior when the
contractors were doing work at the building. Finally, the

individual Defendants were often exposed to, or received reports of, violent outbursts from Ms. Matarese, and, throughout the years, they observed objectionable behavior on the part of Ms. Matarese. Plaintiffs maintain that such issues were not documented pursuant to APC protocol in their tenant file that APC maintains for each tenant.

## Nonrenewal of Plaintiffs' Lease

In the summer of 2008, Defendant McGregor advised APC personnel that the non-renewal of Plaintiffs' lease had been approved. On July 22, 2008, Defendant Mann emailed Defendant McGregor about the decision and asked for examples he could use to defend APC's actions. Defendant McGregor then emailed APC personnel, requesting information to "build a case" against Plaintiffs. Some employees responded, citing examples of Ms. Matarese's inappropriate behavior. Plaintiffs contend that the incidents in question all involved her complaints about APC's failure to accommodate her chemical sensitivities.

On August 8, 2008, Defendant McGregor advised Ms. Matarese that she must vacate her unit when the lease expired. He stated, "We are tired of accommodating your sensitivities to paint and cigarette smoke." (Pls.' Statement of Material Facts ¶ 7.) He further explained that she had violated community rules and her lease when she asked building maintenance to inspect her

16

mother's bathroom for mold growth and by interfering with other tenants' right to smoke. Shortly thereafter, Plaintiffs' and Ms. Bauman's units were publicly listed for rental.

On October 6, 2008, Ms. Matarese had a telephone conversation with Defendant Mann during which he told Ms. Matarese that Archstone would not consider renewing her lease. In addition, he told her that he would not transfer Plaintiffs to, or allow them to rent at, another Archstone property, explaining that it would not be a good idea. Instead, he advised Ms. Matarese that "there are a lot of other communities out there, and I think you need to be, be [sic] looking around there and you'll find something that meets your needs I'm sure in the area. There's a lot of competition and that's what would be for the best." (Second Am. Compl. ¶ 115, 63.) Subsequently, Defendant McGregor cautioned certain regional Archstone personnel not to rent to Ms. Matarese and advised them to watch for the use of her maiden name. Further, the operations manager suggested that Ms. Matarese be put on APC's decline list at Saferent, the entity that screens Archstone's applications.

On or about August 12, 2008, Defendants issued a lease nonrenewal letter to Plaintiffs. The letter contained no explanation but informed Plaintiffs that they must vacate the

unit by November 11, 2008. [7] On November 29, 2008, APC issued an amended nonrenewal notice, requiring Plaintiffs to vacate by December 31, 2008. Plaintiffs remain at APC. Their lease was converted to a month-to-month tenancy, whereby, with proper notice, they can be evicted.

On July 31, 2009, Plaintiffs filed their original Complaint, which was first amended as a matter of right on December 30, 2009. Plaintiffs filed a Second Amended Complaint on March 3, 2010. [8]

In their Second Amended Complaint, Plaintiffs asserted the following claims of discrimination on the basis of handicap: refusal to rent in violation of FHA § 3604(f)(1) and VFHL § 36-96.3(A)(8) (Counts I & II); discrimination in the terms, conditions, and privileges of the rental of a dwelling in violation of FHA § 3604(f)(2) and VFHL § 36-96.3(A)(9) (Counts III & IV); refusal to make reasonable accommodations in rules,

---

[7] At some point during this time period, Plaintiffs filed complaints with the Department of Urban Housing and Development and the Virginia Fair Housing Office.

[8] Plaintiffs filed their Second Amended Complaint without seeking leave of Court pursuant to Federal Rule of Civil Procedure 15(a)(2). However, Magistrate Judge Anderson considered Plaintiffs' then-*pro se* filings as a request for leave to file the Second Amended Complaint and, in an Order dated June 2, 2010, granted Plaintiffs leave to file the Second Amended Complaint.

18

policies, practices, and services in violation of FHA §

3604(f)(3)(B) and VFHL § 36-96.3(B) (Counts V & VI); notice and

statement of preference, limitation, or discrimination based on

handicap in violation of FHA § 3604(c) and VFHL § 36-96.3(A)(3)

(Counts VII and VIII); statements intended to coerce,

intimidate, threaten, or interfere with Plaintiffs' exercise of

enjoyment of fair housing in violation of FHA § 3617 and VFHL §

36-96.5 (Counts IX & X); negligence as to the Archstone

Defendants and Defendants McGregor, Mann, and Nur (Count XI);

and retaliation in violation of FHA § 3617, VFHL § 36-96.5, and

regulation 135-50-220 of the Virginia Fair Housing Regulations

(Count XII). Only Counts I-VIII, XI, and XII remain before the

Court.[9]  Defendants have filed the present Motion for Summary

Judgment, which Plaintiffs oppose.

---

[9] In an Order dated March 22, 2010, the Court dismissed Counts IX
and X of the Complaint.  Plaintiffs agreed that this dismissal
applied to the amended Complaints.  Subsequently, in an Order
dated May 29, 2010, the Court granted Defendants' Judgment on
the Pleadings as to Defendant Katrina Wood on Counts I-VIII and
Defendant Deeqa Nur on Counts I-IV, VII, and VIII.  Finally, in
an Order dated July 26, 2010, the Court granted Defendants Nur's
and Wood's Motion to Dismiss Count XII, which effectively
dismissed Defendant Wood as a party to the case.     Upon
Defendants' oral motion at the July 23, 2010 hearing, Defendant
Wood was officially dismissed because there were no remaining
claims pending against her.

19

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. ANALYSIS

### A. The Court Denies Defendants' Motion for Summary Judgment on the Basis that Ms. Matarese Does not Have a Handicap (All Counts)

The Court denies Defendants' Motion for Summary Judgment on Plaintiffs' discrimination claims on the ground that Ms. Matarese's condition does not rise to the level of a "handicap" under the FHA because Plaintiffs demonstrated that there is a material dispute of fact as to whether (1) Ms. Matarese's impairment substantially limits her ability to breathe, (2) there was a record of having such impairment, and (3) Defendants regarded her as handicapped. The FHA defines handicap as (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of

21

having such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h). The term "major life activities" refers to "those activities that are of central importance to daily life." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir. 2004) (citation and internal quotation marks omitted). The determination as to whether one has a handicap depends on the particular facts of each case. *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001).

In evaluating whether an individual has a disability on summary judgment, the court must look to see whether the individual produced enough evidence from which a reasonable factfinder could conclude that the nature and severity of his impairment significantly affected his ability to perform major life activities as compared to an average member of the general population. *Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996); *Vailes v. Prince George's County, Maryland*, 39 Fed. Appx. 867, 869, Nos. 01-2347, 01-2394, 2002 WL 1421117, at *1 (4th Cir. 2002) (citation omitted). The factors considered when determining if a plaintiff is substantially limited in the major life activity of breathing are the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment. *Bridges v. Reinhard*, Civ. No. 3:08cv253, 2008 WL 5412843, at *6

(E.D. Va. 2008) (citing 29 C.F.R. § 1630.2(j)(2)). Such a determination is necessarily made on a case-by-case basis, particularly when the alleged impairment is asthma or allergies. *Id.* The severity of the condition can vary significantly from individual to individual, as well as the nature of the allergen involved and the duration of any episode. *Id.* As such, it is necessary to examine the particular symptoms alleged by the Plaintiff, the duration of her episodes, the commonality of the allergen involved and the overall impact the allergen has on her ability to breathe. *Id.*

Here, there is a dispute of material fact as to whether Ms. Matarese's impairment substantially limits her breathing.[10] Facts relevant to a determination of the nature and severity of the impairment, the duration of the impairment, and the permanent and long-term impact of her impairment are all in

---

[10] The Court will consider only whether Ms. Matarese's impairment substantially limits the major life activity of breathing. The Court will not consider whether Ms. Matarese's impairment substantially limits her ability to work because she previously stated that her unemployment was unrelated to her claims, and, alternatively, she has not offered any evidence that she is limited in her ability to work. The Court will also not consider whether Ms. Matarese's impairment substantially limits her ability to interact socially with others because Plaintiffs have failed to cite to any authority that the United States Court of Appeals for the Fourth Circuit considers social interaction a major life activity.

23

dispute, precluding summary judgment on this issue. Further,
Defendants' position that Ms. Matarese's condition is too
episodic or intermittent to qualify as a handicap cannot be
decided as a matter of law because there are material facts in
dispute as to the frequency and nature of her impairment.[11]

In addition, there are material facts in dispute as to
whether Ms. Matarese has a record of impairment. For a person
to have a record of impairment, he or she must have a history
of, or have been misclassified as having, a mental or physical
impairment that substantially limits one or more major life
activities." *Adams v. Rice*, 531 F.3d 936, 946 (D.C.C. 2008)
(citing 45 C.F.R. § 84.3(j)(2)(iii) (emphasis added)). These
types of claims will often involve tangible documents of some

---

[11] Plaintiffs argue in their Surreply that *Rohan v. Networks
Presentations LLC*, 375 F.3d 266 (4th Cir. 2004) and *EEOC v. Sara
Lee Corp.*, 237 F.3d 349 (4th Cir. 2001), the cases upon which
Defendants rely to argue that an impairment that is merely
episodic does not qualify as a disability, may no longer be good
law due to the amendments to the Americans with Disabilities
Act. Both *Rohan v. Networks Presentations LLC* and *EEOC v. Sara
Lee Corp.* rely heavily on Supreme Court cases that were
expressly rejected by the 2008 amendments to the ADA. However,
the 2008 amendments to the ADA did not go into effect until
January 1 2009, which is after much of Defendants' alleged
discriminatory acts occurred. It appears that the only alleged
discrimination that occurred after that date was Defendants'
refusal to provide reasonable accommodations and, as discussed
below, these claims fail as a matter of law on a different legal
basis.

kind, such as medical reports or employment forms detailing a previous medical condition, but plaintiffs may also satisfy the "record of" definition simply by showing that they have a history of a qualifying impairment. *Id.* Notably, just as a plaintiff may not qualify as disabled or regarded as disabled based on an illness alone, evidence of a prior illness, without more, is insufficient to show a record of disability. *Id.* Thus, plaintiffs must show that they have a record of their alleged impairments substantially limiting one or more major life activities. *Id.*

Here, again, there is a dispute of material fact as to whether Ms. Matarese has a record of impairment or handicap. She notified APC personnel on multiple occasions of her impairment and the difficulty she experiences in breathing when exposed to certain chemicals. In addition, she provided Defendants with two physicians' letters regarding her condition, along with a Medical Verification Form from Dr. Williams. Accordingly, based on this evidence, there is a dispute of material fact as to whether, with these materials and information, Ms. Matarese had a record of a handicap, such that she would fall within the FHA protected class.

Finally, there is a genuine issue of material fact as to whether Ms. Matarese was regarded as disabled. An individual is

"regarded as" disabled if a covered entity "mistakenly believes that [the] person has a physical impairment that substantially limits one or more major life activities" or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Adams v. Rice*, 531 F.3d 936 (D.C.C. 2008); see *Rohan v. Networks Presentations LLC*, 375 F.3d 266 (4th Cir. 2004) (citation and internal quotation marks omitted) ("A person is regarded as disabled if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities."). According to Plaintiffs, Defendant Mann acknowledged Ms. Matarese's chemical sensitivities. In addition, at times, Defendants acquiesced to Plaintiffs' various requests for accommodations. Defendants contend that the reason for providing such accommodations was that, as a general practice, they always tried to accommodate the requests of their tenants. They maintain that such accommodation was not intended to indicate that they regarded Ms. Matarese as handicapped. Whether the reason for Defendants' responses was that they acknowledged her disability that warranted accommodations or because Defendants were simply trying to accommodate Plaintiffs' requests as they would any tenants is a question for determination by a factfinder. Thus, Plaintiffs have

26

demonstrated there is a dispute of material fact as to whether Defendants regarded her as handicapped as defined in the FHA.[12] Therefore, for these reasons, the Court denies Defendants' Motion for Summary Judgment on the basis of whether Ms. Matarese qualifies as having a handicap.

B. The Court Denies Defendants' Motion for Summary Judgment on Plaintiffs' Claims for Refusal to Rent under 42 U.S.C. § 3604(f)(1) and Virginia Code §36-96.3(A)(8) (Counts I and II)

The Court denies Defendants' Motion for Summary Judgment on Plaintiffs' refusal to rent claims because (1) Defendants have failed to establish as a matter of law that the nonrenewal of Plaintiffs' lease, the conversion of the lease to a month-to-month tenancy, and the refusal to rent at other Archstone locations, do not constitute violations of § 3604(f)(1) of the FHA or section 36-96.3(A)(8) of the VFHL; and (2) there is a dispute of material fact as to whether Defendants discriminated against Plaintiffs on the basis of Ms. Matarese's handicap in connection with these actions. Under 42 U.S.C. § 3604(f)(1), it

---

[12] In a letter dated October 16, 2009, Defendants' counsel stated, "We recognize and acknowledge the disability that you have previously identified." Plaintiffs maintain that this statement can be imputed to Defendants and supports their claim that Defendants regarded Ms. Matarese as having a handicap and recognized her need for various accommodations. To the extent such statement does constitute an admission, this admission is only relevant for discriminatory actions that occurred after the date of this letter.

is unlawful to discriminate in the rental, or otherwise make unavailable or deny, a dwelling to a renter because of a handicap of the renter, or a person residing in the dwelling after it is rented. 42 U.S.C. § 3604(f)(1).

First, the Court is not persuaded by Defendants' argument that Plaintiffs' claims fail as a matter of law because Plaintiffs were not refused a rental in the inchoate stages of rental but rather, their lease was converted to a month-to-month tenancy, and they continue to reside in the apartment. The statute prohibits discrimination in the rental of an apartment, or otherwise making unavailable or denying a dwelling, on the basis of a handicap. The nonrenewal of a lease falls within the plain meaning of these terms. Defendants have not cited to any case that supports their argument that § 3604(f)(1) is not violated in the nonrenewal of a lease and is violated only when discrimination occurs in the initial decision to grant or deny a lease. Rather, in the cases upon which Defendants rely, § 3604(a) is the section at issue, and this Court has already stated at the hearing on Defendants' Motion to Dismiss that the cases interpreting § 3604(a) are inapplicable.

Second, the Court finds that there is a material dispute of fact as to whether Defendants discriminated against Plaintiffs on the basis of Ms. Matarese's handicap in their decision not to

28

renew Plaintiffs' lease, their conversion of the lease to a
month-to-month tenancy, and their refusal to allow Plaintiffs to
rent at any other Archstone property. Defendants argue that
their decision was based on a valid, nondiscriminatory reason.
In support of this position, they cite to the history of
problems and complaints that they have had with Plaintiffs over
the course of their tenancy. However, Plaintiffs have offered
evidence to demonstrate that there is a material dispute of fact
as to whether that reason is merely a pretext. Specifically,
Plaintiffs explain that their file contains no record of
problems with Plaintiffs or evidence of any of the complaints
Defendants apparently received from other tenants. In addition,
Ms. Matarese's alleged egregious behavior occurred in connection
with her requests for, and Defendants' refusal to provide,
reasonable accommodations, and Ms. Matarese's complaints for
Defendants' denial of her requests. Further, the decision came
shortly after Ms. Matarese's requests for accommodations and
Defendant McGregor's alleged statements that APC was refusing to
renew her lease because APC was tired of accommodating Ms.
Matarese's requests for accommodations due to her sensitivity to
paint and cigarette smoke. It is within the purview of the
factfinder to determine whether the statements made by the
employee Defendants demonstrate discriminatory intent in the

decision not to renew Plaintiffs' lease. Accordingly, for these reasons, the Court denies Defendants' Motion for Summary Judgment on Plaintiffs' refusal to rent claims.

C. The Court Denies Defendants' Motion for Summary Judgment on Plaintiffs' Claims Against Defendants McGregor and Mann and Grants Summary Judgment on Plaintiffs' Claims against Nur and Garcia for violations of FHA § 3604(c) and VFHL section 36-96.3(A)(3) (Counts VII and VIII)

Section 3604(c) of the FHA makes it unlawful to make a statement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on handicap. 42 U.S.C. § 3604(c). Borrowing from Title VII discrimination cases, courts have held that a statement of discrimination is made "with respect to the sale or rental of a dwelling" only if it is related to the decision of whether or not to sell or rent the property; a stray remark wholly unrelated to the decisional process is not actionable under § 3604(c). *See Campbell v. Robb, 162 Fed. Appx.*, 460, 467, No. 04-1567, 2006 WL 45253, at *5 (6th Cir. 2006) (reviewing statements in the context of racial discrimination) (citations and quotations omitted).

To determine whether a statement indicates impermissible discrimination, an "ordinary listener" standard is used. *See White v. U.S. Dept. of Housing and Development*, 475 F.3d 898, 906 (7th Cir. 2007) (applying standard to discrimination claim

30

based on familial status). Under this objective standard, the court must determine whether the alleged statement would suggest to an "ordinary listener" that a person with the protected status is preferred or disfavored for the housing in question. *See id.* The ordinary listener "is neither the most suspicious nor the most insensitive of our citizenry." *Id.* (quotation and citations omitted).

Applying this standard, the Court denies summary judgment on Plaintiffs' 42 U.S.C. § 3604(c) and Virginia Code section 36-96.3(A)(3) claims against Defendants McGregor and Mann because there is a material dispute of fact as to whether the statements they made with respect to the rental of Plaintiffs' apartment indicated that Plaintiff was disfavored for the housing in question based on her handicap. Specifically, when Defendant McGregor informed Ms. Matarese of the decision of nonrenewal, he expressly stated that the decision was made with the express authorization of Mann, and they were "tired of accommodating Ms. Matarese's sensitivities to paint and cigarette smoke." Under the ordinary listener standard, a factfinder could find that McGregor's statement, made with the authorization of Mann, indicated that Plaintiff was disfavored for the apartment based on her handicap. Further, later statements that Defendant Mann made in connection with the refusal to transfer Plaintiffs to

another Archstone building, under the ordinary listener standard, could also be viewed as indicating discrimination, especially because Defendant Mann gave no reason explaining why Plaintiffs would not qualify for an apartment in another building.

However, the Court grants Defendants' Motion for Summary Judgment on these claims against Nur and Garcia because Plaintiffs have not offered any evidence that these individual Defendants made statements with respect to the rental of Plaintiffs' apartment. With the absence of proof on all of the requisite statutory elements, Plaintiffs' claims against these Defendants must fail.

Therefore, the Court (1) denies Defendants' Motion for Summary Judgment on these claims against McGregor and Mann because there is a material dispute of fact as to whether their statements indicate impermissible discrimination in connection to the rental of an apartment to Plaintiffs, and (2) grants Defendants' Motion for Summary Judgment on these claims against Nur and Garcia because there is no evidence that they made discriminatory statements in connection with the rental of housing.

D. The Court Denies Defendants' Motion for Summary Judgment on Plaintiffs' Unlawful Discrimination Claims as to Discriminatory Intent but Grants Defendants' Motion for Summary Judgment on Plaintiffs' Unlawful Discrimination Claims as to Discriminatory Impact (All Counts)

To prove a prima facie case of discrimination under the FHA, a plaintiff must demonstrate that the housing action or practice being challenged was motivated by a discriminatory purpose or had a discriminatory impact. *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984).

## 1. Discriminatory Purpose

The Court denies Defendants' Motion for Summary Judgment on Plaintiffs' claims that are based on the theory of discriminatory purpose or intent because there is a material dispute of fact as to whether Defendants' nondiscriminatory reason was a pretext for their decision of nonrenewal of their lease. For intentional discrimination claims, plaintiffs must show that the discriminatory animus was a motivating factor, but they do not have to show that it was the primary or dominant purpose. *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996). Once the plaintiff shows that the action was based, at least in part, on discriminatory animus, the burden shifts to defendants to show a legitimate nondiscriminatory reason for their actions. *McDonnell-Douglas v. Green*, 411 U.S. 792, 802-805 (1973). If defendants are able

33

to make a prima facie showing of a legitimate, nondiscriminatory reason, the burden returns to plaintiff to demonstrate that the reason was a pretext. *See id.*

Here, Plaintiffs met their initial burden by producing evidence that discriminatory animus was a motivating factor in their actions in connection with Ms. Matarese's use and enjoyment of her housing. For example, they offered evidence that Defendants refused to respond to Plaintiffs' accommodation requests, responded negatively to Ms. Matarese's requests, and Defendant McGregor, when informing Ms. Matarese of the nonrenewal decision, told her that APC was tired of accommodating her chemical sensitivities.

The burden then shifts to Defendants to assert a legitimate, nondiscriminatory reason for their actions. Here, Defendants argue that the decision of nonrenewal and refusal to rent to Plaintiffs elsewhere is based on complaints they received from other tenants and the difficulties they have experienced in Plaintiffs' failure to abide by community policies. In response to this purported nondiscriminatory reason, Plaintiffs argue that this is merely pretextual because their APC file contains no record of such complaints, and, in fact, they have not had problems with other tenants. In addition, Ms. Matarese's alleged egregious behavior occurred in

connection with her requests for, and Defendants' refusal to
provide, reasonable accommodations, and Ms. Matarese's
complaints for Defendants' denial of her requests. Accordingly,
Plaintiffs have met their burden to survive summary judgment by
demonstrating there is a dispute of material fact as to whether
Defendants' nondiscriminatory reason was a pretext for its
actions. Therefore, the Court denies Defendants' Motion for
Summary Judgment on Plaintiffs' claims based on the theory of
discriminatory purpose or intent.

### 2. Discriminatory Impact

The Court grants Defendants' Motion for Summary Judgment on
Plaintiffs' claims that are based on the theory of disparate
impact. A disparate-impact claim challenges a facially neutral
policy that actually or predictably results in discrimination.
*Reinhart v. Lincoln County*, 482 F.3d 1225, 1229 (10th Cir. 2007)
(internal quotation marks and citation omitted). The plaintiff
need not show that the policy was formulated with discriminatory
intent. *Id*. To establish a prima facie case of disparate
impact discrimination, plaintiffs must show that a specific
policy caused a significant disparate effect on a protected
group. To do this, they must identify the problematic neutral
practice at issue and adduce statistical evidence demonstrating
the disparate impact caused by the practice. *Watson v. Fort*

*Worth Bank & Trust*, 487 U.S. 977, 994 (1988). In making this showing, plaintiffs are required to prove only that a given policy had a discriminatory impact on them as individuals. *Betsey*, 736 F.2d at 987. Thus, to determine whether plaintiffs have met their burden, "[t]he correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied." *Id.*

Here, the Court grants Defendants' Motion for Summary Judgment on the basis of disparate impact because Plaintiffs failed to meet their burden in identifying that a facially neutral policy caused a disparate impact on members of the protected group to which Ms. Matarese belongs. Plaintiffs attempt to meet their burden by arguing that the neutral policy of routine maintenance and the use of VOC paint have a disparate impact on individuals with chemical sensitivities, as demonstrated by the consequences from which Ms. Matarese has suffered. However, by offering evidence of the alleged effects of a neutral policy on one individual, with no evidence of the application of this policy on others, Plaintiffs have failed to demonstrate that the policy produced a disparate impact on

members of a protected class with her handicap.[13]  Therefore, the

Court grants summary judgment on Plaintiffs' unlawful

discrimination claims that are based on the theory of disparate

impact.

E. The Court Grants Defendants' Motion for Summary Judgment on
   Plaintiffs' Claims for Failure to Provide Reasonable
   Accommodations in Violation of 42 U.S.C. § 3604(f)(3)(b)
   and Va. Code § 36-96.3(B) (Counts V and VI)

The Court grants Defendants' Motion for Summary Judgment on

Plaintiffs' reasonable accommodation claims because Plaintiffs

failed to meet their burden and demonstrate that the proposed

accommodations were necessary.  Discrimination in the rental of

a dwelling and the terms, conditions, privileges, and provision

of services and facilities includes "a refusal to make

reasonable accommodations in rules, policies, practices, or

services, when such accommodations may be necessary to afford

such person equal opportunity to use and enjoy a dwelling."  42

U.S.C. § 3604(f)(3)(B).  Thus, under this provision, the FHA

requires an accommodation for a person with a handicap if the

_____

[13] Because the Court's determination turns on Plaintiffs' failure
to make their prima facie case, the Court does not need to
address whether Defendants have satisfied their burden of
producing evidence that there was a genuine business need for
the challenged practice.  *See Reinhart v. Lincoln County*, 482
F.3d 1225, 1229 (10th Cir. 2007) (explaining burden shifting
process in review of discrimination claims).

accommodation is (1) reasonable and (2) necessary to (3) afford the handicapped person equal opportunity to use and enjoy the housing. *See* 42 U.S.C. § 3604(f)(3); *Bryant Woods Inn, Inc. v. Howard County, MD*, 124 F.3d 597 (4th Cir. 1997). The plaintiff bears the burden of proving each of these elements by a preponderance of the evidence. *Id.*

First, in order for an accommodation to be reasonable it must be both efficacious and proportional to the costs to implement it. *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). In determining whether the reasonableness inquiry has been met, a court may weigh the costs and benefits and consider the existence of alternatives to accomplish the benefits more efficiently. *Bryant Woods Inn, Inc.*, 124 F.3d at 604. In measuring the effects of the accommodation, the court may consider its functional and administrative aspects, as well as its costs. *Id.* After all, reasonable accommodations do not require accommodations that impose undue financial and administrative burdens. *Id.*

Second, for an accommodation to be necessary to afford an equal opportunity, there must be a demonstration of a direct linkage between the proposed accommodation and the equal opportunity to be provided to the person with a handicap. *Id.*

This requirement is essentially a causation requirement. *Id.*
If the proposed accommodation does not provide direct
amelioration of a disability's effect, it does not qualify as
necessary. *Id.*

Third, the requirement that an accommodation afford an
equal opportunity "mandates not only the level of benefit that
must be sought by a reasonable accommodation but also provides a
limitation on what is required." *Id.* In other words, the
"equal opportunity" element limits the accommodation duty such
that not every practice that creates a general inconvenience or
burden on the person with a handicap needs to be modified.
*Wisconsin Community Services, Inc.*, 465 F.3d at 749. The FHA
does not require accommodations that provide an increased
benefit or greater opportunity to persons with handicaps above
those provided to a person without a handicap with respect to
matters unrelated to the handicap. *Bryant Woods Inn, Inc.*, 124
F.3d at 604.

Here, Plaintiffs' reasonable accommodation claims fail
because Plaintiffs have not met their burden of showing that the
proposed accommodations are necessary to afford Ms. Matarese an
equal opportunity in housing. Specifically, Plaintiffs have
failed to demonstrate a direct linkage between the proposed
accommodation and the equal opportunity to which a person with a

handicap is entitled.  The Court holds that expert testimony is necessary for Plaintiffs to meet this burden in this case because, whether a proposed accommodation will ameliorate the effects allegedly caused by certain chemicals to the degree necessary to afford Ms. Matarese equal opportunity in housing and not just ameliorate the burdens shared by all individuals exposed to chemicals, is not within the knowledge of a layperson. The only evidence that Plaintiffs offer to show that the proposed accommodations were necessary for Ms. Matarese to be afforded equal opportunity in housing is the affidavit of Dr. Williams, in which he states that the proposed accommodations would allow her to avoid exposure to paint, smoke, or mold, and were intended to ameliorate any negative impact on her chemical sensitivities.  However, Dr. Williams is not designated as an expert on reasonable accommodations and cannot testify on this issue.   Further, even with this conclusory statement, Plaintiffs have failed to meet their burden in establishing the requisite elements of their claim because this affidavit does not state that the proposed accommodations will ameliorate Ms. Matarese's handicap specifically, such that she would be afforded equal opportunity in housing, as compared to similarly situated individuals.  Thus, for the foregoing reasons, Defendants'

Motion for Summary Judgment on Plaintiffs' reasonable
accommodation claims, Counts V and VI, is granted.

## F. The Court Grants Summary Judgment on Plaintiffs' Negligence Claim (Count XI)

The Court grants Defendants' Motion for Summary Judgment on
Plaintiffs' negligence claim as a matter of law. In their brief
in opposition to Defendants' Motion for Summary Judgment,
Plaintiffs clarify that their negligence claim is for
Defendants' failure to train APC employees on FHA reasonable
accommodations. As both parties acknowledge in their briefs, a
claim of negligence requires the existence of a duty, breach of
that duty, and an injury caused by the breach. However,
Plaintiffs have not provided any authority stating that there is
a common law duty to train employees on FHA reasonable
accommodations.[14] Plaintiffs have failed to offer any authority
in support of their legal conclusion that "Archstone
indisputably owed a duty to Plaintiffs to adequately train its
onsite management personnel on critically important FHA

---

[14] In clarifying their negligence claim, Plaintiffs explain that
their claim is "styled as a negligent hiring/negligent
supervision claim" and is essentially a claim based on
Defendants' failure to train employees in FHA requirements
regarding reasonable accommodations. Given this additional
opportunity to state their claim, Plaintiffs did not state that
their claim is one of negligence per se. Thus, the Court will
not analyze Plaintiffs' claim in that legal framework.

41

reasonable accommodations." (Pl.'s Br. 27.) Instead, they

refer the Court to the deposition transcript of Defendants'

reasonable accommodation expert, Douglas Chasick, where he

emphasizes the importance of FHA training. This is insufficient

to impose a legal duty on Defendants. In addition, Plaintiffs

have failed to define the scope of the purported duty or

applicable standard of care. Accordingly, for the foregoing

reasons, Defendants' Motion for Summary Judgment on Plaintiffs'

negligence claim is granted.

## G. The Court Grants Defendants' Motion for Summary Judgment on Plaintiffs' Claims Against APC, Archstone MultiFamily Series I Trust, and Archstone LLC (All Counts)

The Court grants Defendants' Motion for Summary Judgment

against the corporate entities APC, Archstone MultiFamily Series

I Trust, and Archstone LLC for the following reasons. First,

the Court grants summary judgment as to APC because this

identity is the name of a building and is not a legal entity.

Therefore, the Court grants Defendants' Motion for Summary

Judgment in favor of APC on all of Plaintiffs' claims.

Second, the Court grants Defendants' Motion for Summary

Judgment as to Defendants Archstone MultiFamily Series I Trust

and Archstone LLC because Plaintiffs have failed to offer any

evidence demonstrating that these Defendants took active

ownership interest in or operated the building in which

42

Plaintiffs reside and where the alleged discrimination occurred. In support of their position that these entities are liable for the allegations at issue, Plaintiffs quote the FHA provision that prohibits any person or other entity, whose business includes engaging in residential real-estate transactions, from discriminating against any person on the basis of handicap. *See* 42 U.S.C. § 3605(a). Plaintiffs also cite to cases in support of the position that liability extends to owners and operators of culpable entities. However, Plaintiffs' cases are materially distinguishable from the present circumstances because none of the cases imposed liability on a corporate entity that had no direct role in the operations and that merely served as a holding company for ownership interests. Plaintiffs have failed to provide any evidence demonstrating the involvement of these corporate Defendants in the operation of APC, and evidence of the mere holding of ownership interests in APC is insufficient to impose liability on these corporate Defendants.[15] *Cf. Johnson v. Flowers Industries, Inc.*, 814 F.2d 978 (4th Cir. 1987)

---

[15] In a footnote, Plaintiffs argue that APC could be considered an agent of these corporate Defendants, and the issue of agency is a question of fact. While it is generally true that the question of agency is one of fact, here, Plaintiffs have offered no evidence demonstrating that APC was an agent of these corporate entities and has, therefore, failed to survive summary judgment on this basis.

43

(explaining that a corporate shareholder of a subsidiary is entitled to limited liability and is not liable for the subsidiary's wrongful discharge claim, where the corporate shareholder exercised only a normal amount of control incident to the ownership interest). Therefore, the Court grants summary judgment against these corporate Defendants on all of Plaintiffs' claims.

## IV. Conclusion

Therefore, Defendants' Motion for Summary Judgment is granted in part and denied in part.

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion is GRANTED in part and DENIED in part.

The Court GRANTS Defendants' Motion as to all Defendants on counts V, VI, and XI. Further, the Court GRANTS Defendants' Motion on all counts on the basis of disparate impact but DENIES Defendants' Motion on all counts on the basis of discriminatory intent. By this ruling, Defendant Nur is effectively dismissed as a party to this case because the Court's Orders of March 22, 2010; May 19, 2010; and July 26th, 2010 disposed of all other Counts asserted against Defendant Nur.

The Court also GRANTS Defendants' Motion on counts VII and VIII as to Defendant Amilcar Garcia and DENIES Defendants' Motion on these counts as to all other remaining Defendants.

Finally, the Court GRANTS Defendants' Motion as to Archstone Pentagon City (f/k/a Parc Vista), Archstone MultiFamily Series I Trust, and Archstone LLC on all counts.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this ___5___ day of January, 2011.

Alexandria, Virginia
1/5/2011

_____/s/_____

Gerald Bruce Lee
United States District Judge

45